**In re Helen COSTELLO, Debtor.**

**Bankruptcy No. 93–229–8P7.**

United States Bankruptcy Court,
M.D. Florida,
Tampa Division.

Oct. 17, 1994.

See also 172 B.R. 127.

D. Turner Matthews, Bradenton, FL, for debtor.

V. John Brook, Jr., Trustee, St. Petersburg, FL.

Dennis J. LeVine, Tampa, FL, for trustee.

Larry M. Foyle, Tampa, FL, for Victor Levin.

## ORDER ON MOTION FOR SANCTIONS

ALEXANDER L. PASKAY, Chief Judge.

This is the last chapter in a long-drawn out odyssey of Helen Costello (Debtor) in not only this Division of this District but also for a change of scenery in the Orlando Division, and ultimately in the Northern District of Georgia. Victor Levine (Levine) who got tired of being constantly frustrated by the Debtor due to her repeated attempts to seek the protection of the automatic stay imposed by § 362(a) of the Bankruptcy Code, filed the present Motion under consideration seeking an order to impose sanctions on the Debtor. Not to be left out, the Debtor also filed her own Motion and sought an Order to impose sanctions on Levine on the time honored adage of "what is good for the goose is good for the gander." In order to place the Motions under consideration in proper focus it should be helpful to recap the Debtor's arduous journey in the bankruptcy courts, not only of this District but also of the Northern District of Georgia.

The Debtor commenced her journey in the bankruptcy court in the Tampa Division of the Middle District of Florida by filing a Voluntary Petition For Relief under Chapter 11 of the Bankruptcy Code on August 24, 1988. Having failed to achieve reorganization, her Chapter 11 case was dismissed on October 7, 1992. During the pendency of the Chapter 11 case, on December 30, 1990, the Debtor borrowed $250,000 from Levine. This loan was secured by a mortgage on three parcels of real property, owned by the Debtor, and located in Manatee County, Florida. The loan fully matured on January 31, 1991, and fell into default, and on March 7, 1991, Levine filed a foreclosure action. On December 27, 1991, the Circuit Court entered a Final Judgment of foreclosure and ordered the properties to be sold by the clerk at a foreclosure sale. In due course the foreclosure sale was set but canceled due to the Debtor filing a new Petition For Relief, this time under Chapter 7 on February 22, 1992. On June 26, 1992, this Court granted an Amended Motion For Relief from the Automatic Stay filed by Levine. On July 2, 1992 the Debtor converted her Chapter 7 case to a Chapter 11 case. On September 16, 1992, this Court dismissed the Debtor's second case. On October 23, 1992, the Debtor filed her third Chapter 11 case but, perhaps because she felt that she had overstayed her welcome in the Tampa Division, she filed this Petition in the Orlando Division of the District. On November 9, 1992, Levine filed an Emergency Motion in Orlando and again sought relief from the automatic stay. On November 10, 1992, the Court in the Orlando Division granted Levine's Motion, annulled the automatic stay and ruled that the automatic stay would not apply to any subsequent filings by the Debtor concerning the three parcels of real estate involved in the foreclosure described earlier. The Debtor having assumed that her sojourn in the Tampa Division was long forgotten tried again and filed her fourth bankruptcy case, again under Chapter 7, on November 12, 1992, just prior to the rescheduled foreclosure sale. Notwithstanding, the clerk of the Circuit Court did proceed and concluded the sale. On November 19, 1992, the Debtor filed, in the State Court, an objection to the sale contending that the sale violated the automatic stay. On March 15, 1993, the Circuit Court granted the Debtor's Motion, set aside the sale and set a new sale date. Prior to the entry of this Order, the Debtor filed her Motion For Sanctions against Levine and his attorney Larry Foyle for violating the automatic stay. On December 3, 1992, Levine filed a Motion seeking an Order annulling the automatic stay. On January 6, 1993, the Orlando Chapter 11 case was converted to a Chapter 7 case and was transferred to the Tampa Division, where it was consolidated with the already pending Chapter 7 case filed by the Debtor on November 12, 1992, and this is the case currently pending before this Court.

Based on the foregoing one might have assumed that this ended the long drawn-out litigation by the Debtor against Levine. Albeit this turned out not to be what happened because on May 12, 1992 the Debtor transferred title to the three parcels involved by quit claim deed to one G. Harris Gileo, a person allegedly residing in Atlanta, Georgia, who the next day filed a Petition For Relief under Chapter 13 in the Northern District of Georgia, Atlanta Division. On June 1, 1993, the bankruptcy court in Atlanta granted Levine's Motion and lifted the automatic stay on the three parcels of real estate. In sum, in the span of six years the Debtor managed to hang on and use the automatic stay in three different courts in a hopeless and futile attempt to salvage the unsalvageable, that is the three parcels of real property on which the mortgage of Levine was foreclosed in 1992.

In this connection, it should be pointed out that in her Petition filed in the Orlando Division, the Debtor used a telephone answering service as her address and it is without dispute that she never resided in the Orlando Division nor did she ever have any property or business in the Orlando Division. The case filed in Georgia is even more puzzling. As noted it was filed by one G. Harris Gileo. The bankruptcy court in Atlanta found when ruling on Levine's Emergency Motion to Annul the Stay that G. Harris Gileo listed his address as 195 Starboard Point, Roswell, Georgia, that this was the address of one Jimmie Quoss who had resided at that address since August of 1978 and did not know anyone by the name of G. Harris Gileo. A search by Dunn & Bradstreet was unable to locate anyone by that name in Atlanta. There is evidence in this record (Debtor's Exh # 1) that there is in fact such a person, but there is no evidence that G. Harris Gileo ever resided in Atlanta. It is not too difficult to conclude from the foregoing that this filing was again just another desperate attempt by the Debtor to use the bankruptcy court to frustrate Levine in his effort to gain benefit of his final judgment and finally complete the foreclosure action he commenced in March 7, 1991.

These are the undisputed facts based on which Levine contends that he is entitled to an Order imposing sanctions on the Debtor. The Motion fails to specify what is the precise authority relied on by Levine which would warrant the imposition of sanctions. Notwithstanding, it is evident from this record that the Debtor did violate Bankruptcy Rule 9011, the Certification Rule, by filing her Petition in the Orlando Division on which she certified by her signature that she was a resident of Orlando when it is without dispute, that she never resided in Orlando nor did she ever have any property or any business located in that city.

F.R.B.P. 9011 mandates the imposition of sanctions if a party certifies by his or her signature that the facts stated in the document are true and well grounded in fact, ascertained after reasonable inquiry. It is evident that in the present instance, the statement on her Petition filed in Orlando was false and she very well knew that it was false when she signed the Petition. Ordinarily this would end the inquiry because in none of the six cases have any other documents been signed by her as far as it appears from the record which violated the certification rule of F.R.B.P. 9011. Thus, theoretically, any sanction imposed for violating F.R.B.P. 9011 in the Orlando case should be limited to the damages caused or injuries suffered by Levine as a direct result of the violation in the Orlando case.

However, there is a much larger picture involved here and even though it is not urged by Levine, it is clear that the entire procedural history of these cases brings into play the inherent power of a Court to assess attorneys fees as sanctions for a party's bad faith conduct in the course of litigation. In this particular instance, there is hardly any question that anything which transpired after the first Petition of the Debtor was dismissed and after this Court lifted the automatic stay was filed for the sole and limited purpose of preventing Levine from exercising his valid rights based on the mortgage and none of the filings served any other purpose but to frustrate Levine in completing his foreclosure action involving the three parcels of real property.

The power to impose sanctions in Federal courts including the bankruptcy court must be based on some specific authority unless it is imposed pursuant to the Court's general inherent power. The power to impose sanctions under Fed.R.Civ.P. 16 and 37 as adopted by F.R.B.P. 7016 and 7037 are clearly not applicable. Neither does 28 U.S.C. § 1927 authorize federal courts to impose sanctions on an attorney who multiplies proceedings in any case unreasonably and vexatiously.

Whether or not a federal court has the inherent power to impose sanctions was answered by *Chambers v. NASCO, Inc.,* 501 U.S. 32, 111 S.Ct. 2123, 115 L.Ed.2d 27 (1991) where the Supreme Court, Judge White speaking for the Court, held that (1) the federal court has inherent power to assess attorneys fees as a sanction for a party's bad faith conduct in the course of litigation; and (2) its inherent power is not displaced by the sanctioning scheme of 28 U.S.C. § 1927 and the various sanctioning provisions of the Federal Rules of Civil Procedure. There is no justification not to apply the same principles to proceedings before the Bankruptcy Court where the bad faith conduct could be just as egregious as in the District Court, as demonstrated in the present instance.

Based on the foregoing, this Court is satisfied that viewing the totality of the undisputed record in this case, this Debtor exhibited an egregious conduct and totally *improper* behavior during the six cases she instituted in the various bankruptcy courts. Her conduct was especially reprehensible and must be condemned for the filing of cases subsequent to the Orlando case where the Bankruptcy Court ruled that the automatic stay would not apply in any subsequent filings and notwithstanding she refiled the case again in Tampa on November 12, 1992. In addition, she also caused the filing through G. Harris Gileo, an individual who *could not be found in Atlanta and while he* may exist, clearly was nothing but a straw man used by her to prevent Levine from completing his foreclosure.

Having concluded that imposition of sanctions would be proper, that leaves for consideration the determination of what would be the appropriate sanctions. Levine, in his Motion, seeks imposition of sanctions of $240 as reimbursement for costs, $10,000 for attorneys fees and punitive sanctions of $100,000. This Court carefully considered the schedule submitted by Levine in support of his request for sanctions and is satisfied that the imposition of sanctions concerning reimbursement of expenses and attorneys fees is proper and the award should be awarded. Concerning the request for imposition of sanctions by way of a punishment this Court is satisfied that such a sanction should be imposed however, that it should be limited to the sum of $50,000.

It should be pointed out, however, that none of these sums awarded by this Order should be paid out of properties of the estate but only to the extent there is a surplus in this Chapter 7 liquidation case and monies would be ordinarily returned to the Debtor pursuant to the applicable provisions of § 726(a)(6).

One last comment. As noted earlier, the Debtor also filed a Motion and sought imposition of sanctions on Levine for an alleged violation of the automatic stay. The Motion is apparently based on § 362(h) which authorizes imposition of sanctions in favor of an individual who has been injured as a result of a violation of the automatic stay. Considering her own conduct and history of her behavior in the past six years, this Court is satisfied that it would be totally inappropriate to impose sanctions on Levine even though technically Levine may have violated the automatic stay because the Clerk of the Circuit Court did conduct a foreclosure sale after the Debtor filed her fourth bankruptcy case on November 12, 1992. Clearly under the facts recited earlier she was not entitled to any protection of the automatic stay especially in light of the ruling of the bankruptcy court in Orlando, which provided that all stays would be automatically annulled and would not apply to any subsequent findings. It is evident from the foregoing that the Debtor's Motion to impose sanctions is without merit.

Accordingly, it is

ORDERED, ADJUDGED AND DE-CREED that the Motion for Sanctions is granted and sanctions imposed against Helen Costello in favor of Victor Levine in the amount of $60,240 provided, however, that none of these funds shall be paid out of property of the estate and only payable from any surplus the Debtor may receive after the conclusion of the administration of the estate by the Trustee. It is further

ORDERED, ADJUDGED AND DE-CREED that the Motion for Sanctions filed by the Debtor be, and the same is hereby, denied.

DONE AND ORDERED.